UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| HUMBLE EQUIPMENT CO., INC. | * | CIVIL ACTION NO. 17-1575 |
| VS. | * | JUDGE TERRY A. DOUGHTY |
| TEAM EAGLE LTD., ET AL. | * | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for *forum non conveniens* [doc. # 9] filed by defendants, Team Eagle Ltd. and Steve McKeown. For reasons that follow, it is recommended that the motion be **GRANTED**.

### Background

Plaintiff, Humble Equipment Co., Inc. (hereafter "Humble"), a Louisiana corporation which has been based in Ruston, Louisiana, since 1990, operates in several countries, including the United States and Canada. *See* Opposition Memorandum, doc. # 22, p. 5; Steve McKeown Declaration, doc. # 9-2, pp. 1-2, ¶ 6. It provides high-production pavement texturing services to the transportation industry under the trade name "Skidabrader." *See* Petition, doc. # 1-1, p. 2, ¶ 2.

In 2012, Team Eagle expressed interest in purchasing Humble's assets. Daniel A. Swain Affidavit, doc. # 22-1, pp. 1-2, ¶ 5. On August 15, 2012, Team Eagle and Humble executed a Reciprocal Nondisclosure Agreement [doc. # 22-4] (the "NDA"). In December 2016, the negotiations intensified. *See* Petition, doc. 1-1, p. 2, ¶ 3. During this time, Team Eagle was aware that Humble was also negotiating with Blastrac Global, Inc. ("Blastrac") and another company for the purchase of its assets. *See* Steve McKeown Declaration, doc. # 9-2, p. 2, ¶ 8.

Humble engaged Victor Mah, a Canadian resident, to represent it in seeking a buyer for its assets. *See* Victor Mah Declaration, doc. # 25-1, p. 1, ¶ 3. The extent of Mah's authority to

act on behalf of Humble is disputed. Mah asserts that Humble authorized him to represent himself as Humble's chief executive officer and selling agent and that he, on behalf of Humble, "agreed to the essential terms" to sell Humble's assets to Team Eagle in May 2017. *See* Victor Mah Declaration, doc. # 25-1, pp. 1-2, ¶¶ 3 & 6. However, Humble's owners, Jon and Daniel Swain, assert that Mah was not authorized "to enter into any agreement with Team Eagle or anyone else." Daniel Swain Affidavit, doc # 22-1, p. 2, ¶ 8; Jon Swain Affidavit, doc # 22-2, p. 2, ¶ 9. From December 2016 to May 2017, Mah conducted negotiations in Canada with Steve McKeown, president of Team Eagle. *See* Victor Mah Declaration, doc. # 25-1, p. 1, ¶ 4. Humble's owners occasionally participated in the negotiations via email with Mah and McKeown. *See* Opposition Memorandum, Exhibit 10, doc. # 22-10.

On May 4, 2017, Mah sent an email to McKeown stating: "we will accept your offer to purchase Humble equipment," subject to several conditions enumerated therein. Opposition Memorandum, Exhibit 10, doc. # 22-10, p. 4. Both Mah and McKeown assert that McKeown, acting on behalf of Team Eagle, contemporaneously accepted those conditions and that Mah informed McKeown that Humble had ceased negotiations with other potential purchasers. *See* Steve McKeown Declaration, doc. # 9-2, pp. 2-3, ¶¶ 8 & 9; Victor Mah Declaration, doc. # 25-1, p. 2, ¶¶ 6 & 7. Later that month, Mah and McKeown exchanged several emails regarding which buildings would be included in the sale. *See* Opposition Memorandum, Exhibit 10, doc. # 22-10, p. 4. Daniel Swain responded to Mah and McKeown stating that certain parcels of property were then owned by two separate companies, but he was securing a loan to buy them from one of the companies and bring all of the land into a single company that he and Jon Swain could and would sell to Eagle. *See id.* at p. 2.

On August 3, 2017, Team Eagle sent Humble a "Letter of Intent for the Purchase of

Skidabrader Interest" (the "LOI") dated July 19, 2017. *See* Petition, doc. 1-1, p. 3, ¶ 6. The LOI was never executed by Humble. *See id.* at ¶ 8.

Despite Mah's representation to McKeown, Humble continued conducting negotiations with Blastrac. *See* Petition, doc. 1-1, p. 4, ¶ 9. In September 2017, Humble and Blastrac reached a tentative agreement. *See id.* at ¶ 10. On September 15, 2017, Humble informed Team Eagle of its intention to sell its assets to Blastrac. *See id.* at ¶ 11.

Upon receiving this news, Team Eagle asserted that it had an enforceable agreement with Humble for the purchase of Humble's assets and threatened to sue Humble to enforce that agreement. *See* Petition, doc. 1-1, p. 4, ¶ 13. On November 2, 2017, Team Eagle wrote Humble reiterating its position and threatening legal action, which would be initiated in Canada, seeking an injunction to prevent the sale to Blastrac,. *See id.* at ¶ 14. McKeown contacted Blastrac and informed it of Team Eagle's position. *See id.* at ¶ 13. Thereafter, Blastrac informed Humble that it was suspending its purchase of Humble's assets. *See id.* at p. 5, ¶ 15.

On November 13, 2017, Humble filed its Petition for Declaratory Judgment and Damages [doc. # 1-1] in the Third Judicial District Court, Lincoln Parish, Louisiana, naming Team Eagle and McKeown as defendants, and seeking a declaratory judgment finding no enforceable agreement with Team Eagle and seeking monetary damages from Team Eagle and McKeown for "false and defamatory statements," including damages resulting from Blastrac's refusal to move forward with its purchase of Humble's equipment. Team Eagle removed the case to this Court on December 4, 2017, . Notice of Removal, doc. # 1.

On December 12, 2017, Team Eagle initiated legal proceedings against Humble in the Superior Court of Justice for the Province of Ontario in Toronto, Ontario, Canada., seeking specific performance of the agreement for the sale and purchase of Humble's assets or,

3

alternatively, compensatory damages for breach of contract and misrepresentation, punitive or aggravated damages, costs, and interest. doc. # 9-4. Humble has already been served with process under the Hague Convention and has retained Canadian counsel. Doc. #s 9-4, 9-5, 25-4.

Thereafter, on December 22, 2017, Team Eagle filed the instant motion, on the bases that (1) Canada is an available and adequate forum that would be most convenient to the parties and witnesses because the majority of the witnesses and evidence are located in Canada, and (2) because Humble filed the instant suit for the purpose of forum shopping in anticipation of its suit against Humble. Motion, doc. # 9. After a lengthy extension of time granted by this court, Humble filed its Memorandum in Opposition, on June 15, 2018 [doc. # 22], arguing that Team Eagle has not met its burden of establishing that Canada is an available and adequate alternative forum or that the public and private interests favor resolution in Canada. Team Eagle filed its Reply Memorandum on June 21, 2018, [doc. # 25]. The matter is now ripe.

## Analysis

### III. *Forum Non Conveniens*

The federal doctrine of *forum non conveniens* provides that,

> when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are established.

*Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48, 114 S. Ct. 981, 985 (1994) (citations and internal quotation marks omitted). In other words, "the doctrine of *forum non conveniens* is nothing more or less than a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to

be declined." *Id.*[1]

The Supreme Court has recognized that the "common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S.Ct. 1184, 1190 (2007) (internal quotation marks and citations omitted). To obtain a *forum non conveniens* dismissal the movant must show "(1) the existence of an available and adequate alternative forum and (2) that the balance of relevant private and public interest factors favor dismissal." *Moreno v. LG Elecs., USA Inc.,* 800 F.3d 692, 696 (5th Cir. 2015) (quoting *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003).

**I.     Availability of an Adequate Alternative Forum.**

"A court facing a motion to dismiss for *forum non conveniens* must first assess whether an alternate forum is both available and adequate." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir.2000) (citation omitted). The Fifth Circuit explained:

> A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum. Meanwhile, a foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.

*Adams v. Merck & Co. Inc.*, 353 F. App'x 960, 962 (5th Cir. 2009) (internal quotation marks and citation omitted) (quoting *Alpine View*, 205 F.3d at 221). Mere differences in the foreign forum's law do not automatically render a foreign forum inadequate, so long as the plaintiff is not

---

[1] The *forum non conveniens* doctrine does not contest that venue properly lies with this court; rather, it argues that venue is more appropriate in another forum. Therefore, removal does not cause the removing party to waive a *forum non conveniens* argument. *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 835 (5th Cir.1993)

deprived of all remedies, or is not limited to a clearly unsatisfactory remedy." *Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 F. App'x 376, 384 (5th Cir. 2004) (citing *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir.2002)). "The substantiative [sic] law of the foreign forum is presumed to be adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice there." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007) (quoting *Tjontveit v. Den Norske Bank ASA*, 997 F. Supp. 799, 805 (S.D. Tex. 1998)).

Humble does not dispute that it is amenable to jurisdiction and process in Ontario, Canada. *See generally id.* Instead, Humble argues that Team Eagle has not established that an Ontario court could hear its false and defamatory statements claims against Team Eagle or apply Louisiana law on those claims. *See id.* at pp. 2-7. In response, Team Eagle cites Canadian statutory and case law on defamation and fraudulent misrepresentation. *See* Memorandum in Support of Motion, Exhibit 9, doc. # 9-10; Reply Memorandum, Exhibit G, doc. # 25-7.

The undersigned concludes that the Superior Court of Justice for the Province of Ontario is an available and adequate forum. Team Eagle's citation to Canadian law establishes that, if the Canadian court applied Canadian law, Humble would have a potential remedy in that court for false and defamatory statements. Humble has not asserted any rationale for why it would be highly unlikely to obtain justice in the Canadian courts.

## II.     Weighing Public and Private Interests.

The court next must assess whether, upon consideration of certain relevant private

interest and public interest factors, dismissal is warranted. *Alpine View, supra*. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794–95 (5th Cir.2007) (citation omitted). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law. The defendant bears the burden of proof on all elements of the *forum non conveniens* analysis. *DTEX, LLC, supra* (citation omitted). The local interest factor seeks to uphold the ideal that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir.2004) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S. Ct. 839 (1947)). Here, the dispute involves two international businesses.

    a)    <u>Private Interest Factors</u>

The cornerstone of this case is whether Humble and Team Eagle entered into a binding agreement for the purchase and sale of Humble's assets. Crucial to resolution of that issue will be a determination of the extent of Mah's authority to act on behalf of Humble. Even in Humble's false and defamatory statements claims, the alleged statements relate to the existence of such an agreement.

Based on the parties' briefs, the primary sources of proof will be witness testimony and electronic documents. While the subject of the alleged agreement was real and personal property

located in Louisiana, it does not appear that the parties' dispute includes issues relating to the quality, quantity, location, or value of that property.  Negotiations took place almost exclusively in Ontario, Canada between Mah, a resident of Manitoba, Canada, and McKeown, a resident of Ontario, Canada.  *See* Steve McKeown Declaration, doc. # 9-2, p. 2, ¶ 7; Victor Mah Declaration, doc. # 25-1, p. 1, ¶ 4.  The vast majority of the witnesses, at least eighteen identified by Team Eagle, to the negotiations and to Team Eagle's actions supporting its detrimental reliance claim reside in Ontario, Canada.  *See* Steve McKeown Declaration, doc. # 9-2, p. 3, ¶ 10.  With respect to Humble's false and defamatory statements claim, Team Eagle and McKeown, who allegedly made those statements, reside in Ontario, Canada; Blastrac and its representatives who allegedly received those statements reside in Oklahoma.  *See* Petition, doc. 1-1, p. 4, ¶ 13.

      The Superior Court of Justice for the Province of Ontario can compel the appearance of the Ontario residents, this Court cannot.  *See* Ontario Civil Procedure Rule 53.04 and Form 53A; Fed. R. Civ. P. 45(c)(1).  Neither court can compel the appearance of Oklahoma residents.  *Id.* Blastrac's president, Mark Haworth, asserts that he is willing and able to appear as a witness in Louisiana, but not Ontario.  *See* Mark Haworth Affidavit, doc. # 2-7, p. 3, ¶ 8.  Mah asserts that he is willing to appear as a witness in either Ontario or Louisiana, but may be subject to compulsory process in Ontario under the Interprovincial Summonses Act.  Victor Mah Declaration, doc. # 22-19, p. 1, ¶ 3; Supplemental Declaration of Victor Mah, doc. # 25-2, p. 1, ¶ 2.  For the vast majority of witnesses, excluding Blastrac's representatives, who could give depositions to be used in either location, it would be significantly cheaper and easier to appear in Ontario than Louisiana.

      b)     <u>Public Interest Factors</u>

      The first two  public interest factors: administrative difficulties and local interest, are

neutral. There is no evidence that either court would encounter administrative difficulties in hearing the dispute and both Louisiana and Ontario have a local interest in the dispute.

Regarding the remaining factors, while the alleged agreement included the sale of real property located in Louisiana, and it is well settled that Louisiana law applies to the transfer of title for real property located in Louisiana. *Kuchenig v. California Co.*, 410 F.2d 222, 224 (5th Cir. 1969) ("Succession to immovable (real) property is determined by the law of the situs of the land."), the dispute in this case does not involve the actual transfer of title–it is undisputed that title has not transferred. The dispute is whether an enforceable agreement to transfer exists. Since the negotiations in question occurred in Canada, primarily between Canadian residents, it appears that the issues of the familiarity of the forum with the law that will govern the case; and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law favor Canada as the forum for this case.

Based on the foregoing, the undersigned concludes that both the private and public interest factors weigh in favor of this dispute proceeding in the Superior Court of Justice for the Province of Ontario. In particular, the difficulty and expense of procuring the appearance of witnesses would be dramatically reduced by litigating in Ontario rather than Louisiana. This Court's inability to compel appearance by the Canadian witnesses or the significant expense for them to appear in Louisiana certainly outweighs the minor inconvenience to the Ontario courts of possibly applying Louisiana law.

### III.    **Anticipatory Lawsuit.**

Finally, Team Eagle argues that dismissal of this action is proper because it was filed as a pre-emptive, anticipatory action in order to gain a forum advantage, and cites to numerous cases in support of its position. *Pac. Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801,

804–05 (5th Cir. 1985); *Pertuit v. Youthspan, Inc.*, No. CIV.A. 02-1188, 2003 WL 356021, at *5, 6 (E.D. La. Feb. 13, 2003). Team Eagle notes that the above principles have been applied to anticipatory suits seeking monetary relief, as well as suits for declaratory judgment. *E.g.*, *Bedrock Logistics, LLC v. Braintree Labs., Inc.*, No. 3:16-CV-2815-M, 2017 WL 1547013, at *1, 5 (N.D. Tex. Apr. 28, 2017) (transferring anticipatory suit for collection on invoices).

To determine whether a lawsuit is anticipatory, courts look to the conduct of the parties prior to the filing of the lawsuit. *Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4 (N.D. Tex. Aug. 22, 2008). "Lengthy negotiations and the tenor of the party's relationship will serve as evidence that a suit was expected to be filed." *Mill Creek Press, Inc. v. The Thomas Kinkade Co.*, No. CIVA.3:04-CV-1213-G, 2004 WL 2607987, at *7 (N.D. Tex. Nov. 16, 2004). When a party is on notice of an imminent lawsuit involving the same or similar issues, "[c]ourts will generally not allow a party to select its preferred forum by filing an action for a declaratory judgment." *Paragon*, 2008 WL 3890495, at *4. To permit otherwise would "divest" the "true plaintiff" "of his right to select the proper forum." *Id.*; *see also Bedrock*, 2017 WL at 1547013, at *2 ("In these cases, deferring to the plaintiff's choice of forum incentivizes and rewards the winner of a race to the courthouse.").

In this case, Humble clearly filed suit with full notice that Team Eagle intended to file its breach of contract action in Canada. Only one conclusion is reasonable: this action was filed in order to give Humble a forum advantage. Accordingly, the undersigned concludes that, for this reason as well, the Court should grant Team Eagle's motion and dismiss this case for *forum non conveniens*.

### **Conclusion**

For the foregoing reasons,

IT IS RECOMMENDED that the motion to dismiss for *forum non conveniens* [doc. # 9] filed by defendants, Team Eagle Ltd. and Steve McKeown, be **GRANTED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 18th of July 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE