UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **HUMBLE EQUIPMENT CO., INC.** | **CIVIL ACTION NO. 3:17-CV-01575** |
| **VERSIS** | **JUDGE TERRY A. DOUGHTY** |
| **TEAM EAGLE LTD., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

**RULING**

Humble Equipment Co., Inc. ("Humble"), a Louisiana corporation, filed this civil action in the Third Judicial District Court, Lincoln Parish, Louisiana, against Team Eagle, Ltd. ("Team Eagle"), a Canadian corporation, and Steve McKeown ("McKeown"), president of Team Eagle and a Canadian resident, seeking a declaratory judgment and monetary damages. Defendants removed the case to this Court. Before the Court is Defendants' Motion to Dismiss for *Forum Non Conveniens* [Doc. No. 9].

On July 18, 2018, the Magistrate Judge issued a Report and Recommendation recommending that the motion be granted [Doc. No. 26]. On August 1, 2018, Humble filed an Objection to the Magistrate Judge's Recommendation [Doc. No. 27]. On August 14, 2018, Team Eagle and McKeown filed a Response to the objection [Doc. No. 28]. Having conducted a *de novo* review of the record in this matter, the Court DECLINES to adopt the Report and Recommendation, and DENIES the motion.

**I. FACTUAL BACKGROUND**

Humble was formed in Louisiana in 1990 and has been located in Ruston, Louisiana, since its inception. It provides high-production pavement texturing services to the transportation industry under the trade name "Skidabrader." In 2012, Team Eagle expressed interest in

purchasing Humble's assets. In December 2016, the negotiations intensified. During this time, Team Eagle was aware that Humble was also negotiating with Blastrac Global, Inc. ("Blastrac") and another company for the purchase of its assets.

Humble engaged Victor Mah ("Mah"), a Canadian resident, to represent it in seeking a buyer for its assets. From December 2016 to May 2017, Mah conducted negotiations in Canada with McKeown, president of Team Eagle. Humble's owners occasionally participated in the negotiations via email with Mah and McKeown. The extent of Mah's authority to act on behalf of Humble is disputed. Mah asserts that Humble authorized him to represent himself as Humble's chief executive officer and selling agent and that he, on behalf of Humble, agreed to the essential terms to sell Humble's assets to Team Eagle in May 2017. However, Humble's owners, Jon and Daniel Swain, assert that Mah was not authorized to enter into any agreement with Team Eagle or anyone else.

On May 4, 2017, Mah sent an email to McKeown stating: "we will accept your offer to purchase Humble equipment," subject to several conditions enumerated therein. Both Mah and McKeown assert that McKeown, acting on behalf of Team Eagle, contemporaneously accepted those conditions and that Mah informed McKeown that Humble had ceased negotiations with other potential purchasers. Later that month, Mah and McKeown exchanged several emails regarding which buildings would be included in the sale. Daniel Swain responded to Mah and McKeown stating that certain parcels of property were then owned by two separate companies, but that he was securing a loan to buy them from one of the companies and bring all of the land into a single company that he and Jon Swain could and would sell to Eagle.

Notwithstanding these communications, on August 3, 2017, Team Eagle sent Humble a "Letter of Intent for the Purchase of Skidabrader Interest" (the "LOI"), which communicated in

writing to Humble that, as of August 3, 2017, there was no agreement between the parties and that the parties would become obligated to one another only if they entered into an asset purchase agreement. The pertinent provisions of the LOI provide as follows:

> Upon the acceptance of this letter of intent by the Seller, the Parties will devote best efforts toward the preparation of a definitive, and legally binding agreement(s) between the Buyer and the Seller regarding the acquisition (the 'Acquisition') of the Company by way of an Asset Purchase Agreement ('Purchase Agreement').
> . . .
> This Letter of Intent is intended to be a statement of the mutual interest of the parties with respect to a possible Transaction and is subject to execution and delivery of a mutually satisfactory Purchase Agreement. Apart from the Exclusive Dealing and Confidentiality provisions (sections J and K of the Term Sheet), nothing herein shall constitute a binding commitment of either party. The parties will become legally obligated with respect to the Transaction only in accordance with the terms contained in the Purchase Agreement relating thereto if, as and when such Document has been executed and delivered by the parties.

The LOI was prepared by Team Eagle and transmitted by McKeown to Dan and Jon Swain, via email on August 3, 2017. The LOI was never executed by Humble. It is undisputed that the parties never entered into an Asset Purchase Agreement.

Humble continued conducting negotiations with Blastrac. In September 2017, Humble and Blastrac reached a tentative agreement. On September 15, 2017, Humble informed Team Eagle of its intention to sell its assets to Blastrac. Upon receiving the news, Team Eagle asserted that it had an enforceable agreement with Humble for the purchase of Humble's assets and threatened to sue Humble to enforce that agreement. On November 2, 2017, Team Eagle wrote Humble reiterating its position and threatening to initiate legal action in Canada seeking an injunction to prevent the sale to Blastrac. McKeown contacted Blastrac and informed it of Team

Eagle's position. Thereafter, Blastrac informed Humble that it was suspending its purchase of Humble's assets.

On November 13, 2017, Humble filed its Petition for Declaratory Judgment and Damages in the Third Judicial District Court, Lincoln Parish, Louisiana, naming Team Eagle and McKeown as defendants, seeking a declaratory judgment finding no enforceable agreement with Team Eagle, and seeking monetary damages from Team Eagle and McKeown for false and defamatory statements as well as damages resulting from Blastrac's refusal to move forward with its purchase of Humble's equipment. Team Eagle removed the case to this Court on December 4, 2017.

On December 12, 2017, Team Eagle initiated legal proceedings against Humble in the Superior Court of Justice for the Province of Ontario in Toronto, Canada, [hereinafter "the Canadian court"] seeking specific performance of the agreement for the sale and purchase of Humble's assets or, alternatively, compensatory damages for breach of contract and misrepresentation, punitive or aggravated damages, costs and interest.

On December 22, 2017, Defendants filed the instant motion, on the bases that (1) the Canadian court is an available and adequate forum that would be most convenient to the parties and witnesses because the majority of the witnesses and evidence are located in Canada, and (2) Humble filed the instant suit for the purpose of forum shopping in anticipation of its suit against Humble.

As indicated above, the Magistrate Judge filed a Report and Recommendation [Doc. No. 26], recommending that Defendant's Motion to Dismiss for Forum Non Conveniens [Doc. No. 9] be granted. Humble has filed an Objection to the Report and Recommendation [Doc. No. 27]. Defendants have filed a Response to Humble's Objection [Doc. No. 28].

The matter is ripe.

## II. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 72(3), this Court's review of the Report is *de novo*:

> *(3) Resolving Objections*. The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

With respect to the Report, pursuant to 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the [magistrate judge's] report [and recommendation] or specified proposed findings or recommendations to which objection is made." Section 636(b)(1) further states "[a] judge of the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *See also Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983).

## III. LAW AND ANALYSIS

### A. *Forum Non Conveniens*

The federal doctrine of *forum non conveniens* provides that,

> when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiffs convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are established.

*Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48, 114 S. Ct. 981, 985 (1994) (citations and internal quotation marks omitted). In other words, "the doctrine of *forum non conveniens* is

5

nothing more or less than a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *Id*.

To obtain a *forum non conveniens* dismissal the movant must show "(1) the existence of an available and adequate alternative forum and (2) that the balance of relevant private and public interest factors favor dismissal." *Moreno v. LG Elecs., USA Inc*., 800 F.3d 692, 696 (5th Cir. 2015) (quoting *Vasquez v. Bridgestone/Firestone, Inc*., 325 F.3d 665, 671 (5th Cir. 2003)).

A defendant invoking *non conveniens* ordinarily bears a heavy burden in opposing plaintiff's chosen forum. *Tellez v. Madrigal*, 223 F.Supp. 3d, 626, 634 (W.D. Tex. 2016), (citing *Sinochem Intern. Co., Ltd. v. Malaysia Intern. Shipping Corp*., 549 U.S. 422, 430 (2007)). Defendant bears the burden on all aspects of the *forum non conveniens* analysis. *Festor v. Wolf*, 647 F.Supp.2d 750, 754 (W.D. Tex. 2009).

The plaintiff's choice of forum is entitled to great weight in the balancing of factors, and unless the balance strongly favors the defendants, the plaintiff's choice of forum should not be overturned. *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.,* 796 F.2d 821, 830 (5th Cir. 1986).

### 1. Availability of an Adequate Alternative Forum

"A court facing a motion to dismiss for *forum non conveniens* must first assess whether an alternate forum is both available and adequate." *Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 221 (5th Cir. 2000) (citation omitted). The Fifth Circuit explained:

> A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum. Meanwhile, a foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.

*Adams v. Merck & Co. Inc.*, 353 F. App'x 960, 962 (5th Cir. 2009) (internal quotation marks and citation omitted) (quoting *Alpine View*, 205 F.3d at 221). "Mere differences in the foreign forum's law do not automatically render a foreign forum inadequate, so long as the plaintiff is not deprived of all remedies, or is not limited to a clearly unsatisfactory remedy." *Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.,* 104 F. App'x 376, 384 (5th Cir. 2004) (citing *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002)). "The substantiative [sic] law of the foreign forum is presumed to be adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice there." *DTEX, LLC v. BBVA Bancomer, S.A.,* 508 F.3d 785, 796 (5th Cir. 2007) (quoting *Tjontveit v. Den Norske Bank ASA*, 997 F. Supp. 799, 805 (S.D. Tex. 1998)).

Defendants have cited Canadian statutory and case law on defamation and fraudulent misrepresentation which establish Humble would have a potential remedy in the Canadian court for false and defamatory statements. Defendants have also cited Canadian law which recognizes a claim for declaratory relief and provides a remedy of the kind and nature sought in this case, and which permits claims for damages of the nature Humble alleges. Defendants argue that Humble has not asserted any rationale for why it would be highly unlikely to obtain justice in the Canadian court. Defendants further suggest that the immovable property at issue is actually owned by a Swain-controlled affiliate of Humble.

Humble contends that Defendants have not established that the Canadian court could hear its false and defamatory statements claims against Defendants, or apply Louisiana law on those claims. Humble further contends that the primary relief that Team Eagle is seeking against Humble is the specific performance of an alleged agreement involving the transfer of certain

assets owned by Humble located in Louisiana, as well as immovable property located in Louisiana, which is not owned by Humble. Furthermore, any agreement to sell immovable property must be in writing and contain a definite price in order to be enforceable under Louisiana law, and there is no written agreement here, as indicated by Team Eagle's Letter of Intent. Humble argues that the Canadian court is not an available forum for the entirety of the case because Team Eagle cannot obtain specific performance of an alleged oral agreement that includes the sale of immovable property located in Louisiana owned by an entity which Team Eagle did not even name as a defendant in the Canadian suit.

The Court finds that, although Humble has shown that Team Eagle may not be able to obtain all the relief it seeks in the Canadian court, i.e., specific performance of an agreement to sell immovable property in the name of a non-party, Humble has nevertheless failed to demonstrate that in the Canadian court it (Humble) will be deprived of the remedies it seeks, i.e., a declaratory judgment and damages. Therefore, the Court concludes that the Superior Court of Justice for the Province of Ontario is an available and adequate forum insofar as the claims Humble asserts. However, that does not end the inquiry, as Team Eagle still has a heavy burden in opposing a plaintiff's choice of forum.

### 2. Weighing Public and Private Interests

The Court next must assess whether, upon consideration of certain relevant private interest and public interest factors, dismissal is warranted. *Alpine View, supra*. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *DTEX, LLC v. BBVA Bancomer, S.A.,* 508 F.3d 785, 794–95 (5th Cir. 2007)

(citation omitted). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. The defendant bears the burden of proof on all elements of the *forum non conveniens* analysis. *DTEX, LLC, supra* (citation omitted). The local interest factor seeks to uphold the ideal that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09, 67 S. Ct. 839 (1947)).

        a)        Private Interest Factors

Team Eagle contends that the cornerstone of this case is whether Humble and Team Eagle entered into a binding agreement for the purchase and sale of Humble's assets, and that crucial to resolution of that issue will be a determination of the extent of Mah's authority to act on behalf of Humble. Team Eagle asserts that the negotiations took place almost exclusively in Ontario, Canada, between Mah, a resident of Manitoba, Canada, and McKeown, a resident of Ontario, Canada, and that the vast majority of the witnesses to the negotiations and to Team Eagle's actions supporting its detrimental reliance claim reside in Ontario, Canada. These witnesses include the appraisers of Team Eagle's assets, the bankers to whom Team Eagle turned for the capital needed to perform under the agreement, the witnesses who developed the business plan for integrations of Team Eagle's assets with Humble Equipment, and other witnesses to Team Eagle's substantial investments of effort, manpower, time and expenditures to prepare to perform under the agreement.

**9**

Humble responds that the cornerstone of this case is not whether Team Eagle and Humble entered into an oral agreement, rather it is the enforceability of the alleged oral agreement and whether Team Eagle repudiated it by virtue of its own actions, namely, by representing to Humble in the LOI that no agreement, oral or otherwise, existed. Humble further argues that key witnesses, who are available to testify in Louisiana, are not available in Ontario, Canada. This includes Blastrac's president, Mark Haworth, a resident of Oklahoma, who is willing and able to appear as a witness in Louisiana, but not Ontario. Humble points out that Mah, a resident of Canada, has agreed to appear as a witness in either Ontario or Louisiana.

The Magistrate Judge agreed with Team Eagle's contentions, concluding that the resolution of whether there was any agreement between Humble and Team Eagle will turn on a determination of the extent of Mah's authority to act on behalf of Humble, and that the Canadian court can compel the appearance of Team Eagle's eighteen witnesses, but this Court cannot. The Magistrate Judge addressed Humble's concerns about the Canadian court being unable to compel the attendance of witnesses in the United States, including Blastrac representatives, by asserting they could give depositions to be used in either court.

This Court finds that Team Eagle has failed to carry its burden of proving that the private interest factors favor the Canadian court. Assuming that it is correct that the resolution of whether there was any agreement between Humble and Team Eagle will turn on a determination of the extent of Mah's authority to act on behalf of Humble, then the only witnesses who have any personal knowledge of that issue are Mah, Dan Swain, and Jon Swain. The Swains are the sole owners of Humble and residents of Ruston, Louisiana, and Mah has signed a declaration stating he is willing to travel to Louisiana to testify before this Court. If the witnesses in the United States, including the Blastrac witnesses, can give depositions to be used in either court,

then, by the same token, so can the eighteen witnesses in Canada, assuming their testimony will be relevant. Furthermore, Dan Swain and Jon Swain, will incur a significant cost, expense and burden if they are required to travel to Ontario, Canada, to pursue their company's claims against Team Eagle.

At best, the private interest factors do not aggregate in favor of either side, and Team Eagle has clearly not carried its burden of proving they favor the Canadian court.

                b)       Public Interest Factors

Team Eagle argues that the public interest factors decisively favor the Canadian court because Canada has a compelling interest in adjudicating disputes arising directly from negotiations between Canadian residents in Canada and a Canadian company's damage claims arising from those dealings in Canada. Team Eagle further argues that, even if Louisiana law will apply to some issues in this case, such as the law dealing with immovable property agreements, the Canadian court is fully capable of applying that law. Finally, Team Eagle contends that Louisiana has little interest in resolving disputes arising from a Louisiana company's decision to clothe a Canadian resident with authority to negotiate on its behalf in Canada with a Canadian company.

The Magistrate Judge concluded that the first two public interest factors--administrative difficulties and local interest--are neutral. The Magistrate Judge further concluded that the remaining public interest factors--familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law--favor the Canadian court as the forum for this case. She reasoned that, although Louisiana law applies to the transfer of title for real property located in Louisiana, the dispute in this case

11

does not involve the actual transfer of title, but whether an enforceable agreement to transfer exists.

Humble objects to the Report and Recommendation, contending that it failed to properly evaluate the Louisiana immovable property component of the alleged oral agreement that Team Eagle is seeking to enforce, inasmuch as Louisiana law requires that even an agreement to purchase immovable property must be in writing and contain a definite price. Humble further objects that the Report failed to mention Louisiana's strong public interest in protecting Louisiana companies, such as Humble, which have always had their principal place of business in Louisiana.

This Court finds that Team Eagle has failed to carry its burden of showing that the public interest factors favor the Canadian court. The second factor, the local interest in having localized controversies resolved at home, rather than being neutral, favors Louisiana. The dispute here is whether a Louisiana company, located in Louisiana, entered into a binding agreement to sell movable and immovable property located in Louisiana. Louisiana has a public interest in protecting companies, such as Humble, which were formed and have always had their principal places of business located in Louisiana. Louisiana has an even stronger public interest in determining the rights of parties with respect to immovable property located in Louisiana. The third and fourth factors: the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law would favor a Louisiana forum, which would be more familiar with the law that will likely govern this action.

To summarize, the case law is clear that the plaintiff's choice of forum is entitled to great weight in the balancing of factors, and unless the balance strongly favors the defendants, the

plaintiff's choice of forum should not be overturned. *Syndicate 420 at Lloyd's, supra.* A weighing of the factors in this case indicates that the factors are either neutral or favor a Louisiana forum. Therefore, the Court finds that Team Eagle has failed to carry its burden of proving that it is entitled to a *forum non conveniens* dismissal.

### B. Anticipatory Lawsuit

The Magistrate Judge agreed with Team Eagle's argument that dismissal of this action is proper because it was filed as a preemptive, anticipatory action in order to gain a forum advantage, citing *Pac. Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804–05 (5th Cir. 1985); v. *Pertuit Youthspan, Inc.,* No. CIV.A. 02-1188, 2003 WL 356021, at *5, 6 (E.D. La. Feb. 13, 2003).

To determine whether a lawsuit is anticipatory, courts look to the conduct of the parties prior to the filing of the lawsuit. *Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. CIV.A.3-07CV2183-M, 2008 WL 3890495, at *4 (N.D. Tex. Aug. 22, 2008). "Lengthy negotiations and the tenor of the party's relationship will serve as evidence that a suit was expected to be filed." *Mill Creek Press, Inc. v. The Thomas Kinkade Co*., No. CIVA.3:04-CV-1213-G, 2004 WL 2607987, at *7 (N.D. Tex. Nov. 16, 2004). When a party is on notice of an imminent lawsuit involving the same or similar issues, "[c]ourts will generally not allow a party to select its preferred forum by filing an action for a declaratory judgment." *Paragon*, 2008 WL 3890495, at *4. To permit otherwise would "divest" the "true plaintiff" "of his right to select the proper forum*." Id.; see also Bedrock*, 2017 WL at 1547013, at *2 ("In these cases, deferring to the plaintiff's choice of forum incentivizes and rewards the winner of a race to the courthouse.").

13

The Magistrate Judge reasoned that since Humble filed suit with full notice that Team Eagle intended to file its breach of contract action in Canada, only one conclusion is reasonable: this action was filed in order to give Humble a forum advantage.

Humble objects that the Magistrate Judge make an unexplainable leap in so concluding, and asserts that it filed suit primarily to obtain a declaratory judgment, so it could proceed with the sale of its assets to Blastrac and for damages. Team Eagle's threats caused Blastrac to terminate its negotiations with Humble, and the only way Humble could pursue the sale to Blastrac was to file suit for declaratory relief against Team Eagle here.

This Court finds that Team Eagle has failed to prove that Humble filed this lawsuit as a preemptive, anticipatory action to gain a forum advantage. Both sides in this case were clearly threatening to file lawsuits in their home forums. Humble happened to file its lawsuit first. However, the mere fact that one party is threatening litigation in its home forum, standing alone, does not create a presumption that the other party is seeking a forum advantage when it files suit first in its home forum. If it did, then Humble would be entitled to the benefit of that same presumption had Team Eagle filed suit in the Ontario court first. That would be too great a leap to make. There has to be something more in order to conclude the first suit was an anticipatory suit. Accordingly, the Court finds that Defendants have failed to show that they are entitled to dismissal of this action on the basis that Humble filed it as a preemptive, anticipatory action in order to gain a forum advantage.

IV.     **CONCLUSION**

For the reasons set forth above, the Court DECLINES to adopt the Magistrate Judge's Report and Recommendation, and the pending Motion to Dismiss Action for *Forum Non Conveniens* [Doc. No. 9] is DENIED.

Monroe, Louisiana, this 15th day of August, 2018.

                                              **TERRY A. DOUGHTY**
                                              **UNITED STATES DISTRICT JUDGE**